UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SHEET METAL WORKERS' NATIONAL
PENSION FUND, NATIONAL ENERGY
MANAGEMENT INSTITUTE COMMITTEE FOR
THE SHEET METAL AND AIR CONDITIONING
INDUSTRY, SHEET METAL OCCUPATIONAL
HEALTH INSTITUTE TRUST, INTERNATIONAL
TRAINING INSTITUTE FOR THE SHEET METAL
AND AIR CONDITIONING INDUSTRY and
NATIONAL STABILIZATION AGREEMENT OF
THE SHEET METAL INDUSTRY FUND,

**REPORT AND
RECOMMENDATION**

Plaintiffs,

CV 08-968 (ADS) (AKT)

- against -

CENTRAL DESIGN SYSTEMS, INC.
and THOMAS NOFER,

Defendants.
-------------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Following the default of Defendant Thomas Nofer, principal owner of Defendant Central Design Systems, Inc., and entry of default judgment by the Clerk of the Court, District Judge Spatt referred this matter to me for an inquest on damages and attorneys' fees. *See* DE 8. Plaintiffs are Trustees of the Sheet Metal Workers' National Pension Fund, Trustees of the National Energy Management Institute Committee for the Sheet Metal and Air Conditioning Industry, Trustees of the Sheet Metal Occupational Health Institute Trust, Trustees of the International Training Institute for the Sheet Metal and Air Conditioning Industry and Trustees of the National Stabilization Agreement of the Sheet Metal Industry Fund (collectively, "Plaintiffs" or the "Funds") who brought this action against Central Design Systems, Inc. ("Central Design")

and Thomas Nofer ("Nofer" or "Defendant") (together, "Defendants")[1] for failure to comply with Defendants' statutory and contractual obligations to Plaintiffs arising out of the Collective Bargaining Agreement ("CBA") entered into between the Sheet Metal Workers' International Association Local Union No. 28 (the "Union") and Defendants. The CBA was effective from August 1, 2005 through July 31, 2009. Plaintiffs have asserted claims for breach of the CBA in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") and the Labor Management Relations Act of 1947, 29 U.S.C. § 141, *et seq*.

Plaintiffs seek an award of unpaid fringe benefit contributions for the period running from November 1, 2006 through June 30, 2007, as well as interest, liquidated damages, costs and attorneys' fees. According to Plaintiffs' unchallenged allegations, the full amount owed, including principal contributions, liquidated damages, interest, costs and attorneys' fees, is $111,065.33. *See* Decl. of Jeffrey S. Dubin in Supp. of Pls.' Damages ("Dubin Decl.") [DE 11], ¶ 7.

Based upon the information submitted by Plaintiffs and for the reasons stated below, the Court finds that Plaintiffs are entitled to the relief requested in their motion to the extent set forth in this Order. I respectfully recommend to Judge Spatt that damages be awarded to Plaintiffs as follows: (1) $ 77,100.22 for unpaid fringe benefits; (2) $15,420.04 in liquidated damages; (3) $ 3,350.00 in attorneys' fees; and (4) $ 450.00 in court costs and disbursements. I further recommend that Plaintiffs be given two weeks to submit the information requested below (*see*

---

[1] Pursuant to Judge Spatt's Order, this action is stayed against Defendant Central Design pending resolution of that entity's bankruptcy case. *See* DE 8. Accordingly, this decision concerns only the default damages for which Defendant Nofer is liable.

Section III(B)(2)) so that the amount of interest to which Plaintiffs are entitled can be finally calculated.

## II. BACKGROUND

This action was commenced in March 2008 by the Trustees of the Funds. The Funds are multi-employer employee benefit plans within the meaning of ERISA, 29 U.S.C. § 1002(3). *See* Compl. [DE 1], ¶ 3.

Defendant Central Design is a New York corporation authorized to do business in New York, and is an "employer" within the meaning of Sections 3(5) of ERISA, 29 U.S.C. § 1002(5). Compl., ¶¶ 4-6. Defendant Nofer was, at all times relevant to the allegations set forth in the Complaint, the sole owner of Central Design. *Id.*, ¶ 17; Pls.' Mem. [DE 12] at 2. Plaintiffs allege that at all relevant times, Nofer exercised control over the activities and operations of Central Design and determined whether that entity made contributions and submitted remittance reports to the Benefit Funds. Compl., ¶¶ 17-18. Pursuant to Article XII(B) of the CBA, Defendants were obligated to make fringe benefit contributions to the Funds in specified amounts based upon the number of hours worked by the employees covered under this CBA. A complete copy of the CBA is annexed as Exhibit A to the Declaration of Walter Shaw, Billing and Eligibility Manager of the Funds, in Support of Plaintiffs' Damages ("Shaw Decl.") [DE 10]. Plaintiffs allege that between November 1, 2006 and June 30, 2007, Defendants failed to make fringe benefit contributions for work performed by Union members under the terms of the CBA. Compl., ¶ 15; Dubin Decl., ¶ 7.

Plaintiffs filed this action on March 7, 2008. The Summons and Complaint were served on Nofer on April 15, 2008 and on Central Design on May 1, 2008, and Plaintiffs filed proof of

service with the Clerk of this Court on May 19, 2008. *See* Dubin Decl., ¶ 3; *see also* DE 2-4. The deadlines for Nofer and Central Design to answer or move with respect to the Complaint were May 5, and May 21, 2008, respectively, and neither Defendant made any request for an extension of this deadline. *See* DE 4. Neither Defendant filed an answer or moved in connection with the Complaint by the respective deadlines. To date, Defendants still have not done so. By Motion dated July 3, 2008, Plaintiffs moved for entry of a default judgment. *See* DE 5-6. On the same date, Plaintiffs served a copy of the default motion on Defendants Nofer and Central Design by first-class mail. *See* DE 5. A Certificate of Default was entered by the Clerk of this Court on July 9, 2008, and copies of the Certificate were mailed to all parties on the same date. *See* DE 7. Judge Spatt then issued an Order (1) staying the action against Defendant Central Design pending resolution of its bankruptcy case; (2) entering a default judgment against Defendant Nofer; and (3) referring this matter to me to determine the damages, if any, to which Plaintiffs are entitled. *See* DE 8. Following Judge Spatt's referral, this Court issued an Order dated January 29, 2009 directing Plaintiffs to submit documents in support of their damages request, and to serve that order and the supporting papers upon Defendants. *See* DE 9. Plaintiffs served both this Court's January 29, 2009 Order and the documents submitted in support of damages and filed a sworn declaration of service on ECF. *See* DE 11-1; DE 12.

### III. DISCUSSION

#### A. Defendant's Personal Liability

For purposes of an inquest, the Court generally accepts as true all of the well-pleaded factual allegations set forth in the Complaint, except those related to damages. *See Trustees of*

*the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr.*, No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). However, "[e]ven after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Philip Gen. Constr.*, 2007 WL 3124612, at *3 (quoting *In re Wildlife Ctr., Inc.*, 102 B.R. 321, 325 (E.D.N.Y. 1989)). Accordingly, this Court must first determine whether Defendant Nofer may be held personally liable for damages sought by Plaintiffs in this case.

Under ERISA, plan fiduciaries may be held liable in their personal capacities for breach of their fiduciary duties. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2). A person is a "fiduciary" as defined by ERISA if that person "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets. . . ." 29 U.S.C. § 1002(21)(A); *see also LoPresti v. Boesch*, 126 F.3d 34, 40 (2d Cir. 1997) ("Congress intended ERISA's definition of fiduciary to be broadly construed") (citation and internal quotations omitted). Nofer's personal liability as a fiduciary therefore depends upon whether (1) the unpaid contributions to the Funds constitute plan assets, and (2) if so, whether Nofer exercised the requisite level of control over such assets. *See Philip Gen. Constr.*, 2007 WL 3124612, at *5 (citing *NYSA-ILA Med. & Clinical Servs. Fund v. Catucci*, 60 F. Supp. 2d 194, 200 (S.D.N.Y. 1999)).

Whether due and unpaid contributions constitute fund assets depends upon the definition of "fund assets" in the underlying wage agreement. *See Philip Gen. Constr.*, 2007 WL 3124612, at *5 ("Delinquent contributions to a benefit fund are fund assets if so defined in the agreement

creating the fund.") (citations omitted); *see also Trustees of the Conn. Pipe Trades Local 777 Health Fund v. Nettleton Mech. Contractors, Inc.*, 478 F. Supp. 2d 279, 283 (D. Conn. 2007) ("the question of when an employer's contribution becomes an 'asset' of a plan must be determined by reference to the rights and obligations created by the underlying wage agreement") (citing, *inter alia*, *United States v. Panepinto*, 818 F. Supp. 48, 51 (E.D.N.Y. 1993)). Thus the Court turns to the applicable Trust Agreements entered into between the Funds and Central Design to determine whether Central Design's unpaid contributions constitute "plan assets."

The Amended and Restated Agreement and Declaration of Trust of the Sheet Metal Workers' National Pension Fund defines "Contributions" as "money required to be paid to the Fund in accordance with the Collective Bargaining Agreement between the Union and an Employer." *See* Shaw Decl., Ex. F, Art. 1, § 4. The Amended and Restated Agreement and Declaration of Trust of the National Stabilization Agreement defines "Contributions" as "the contributions made or required to be made by Employers to the Fund, or to a Local Fund." *See* Shaw Decl., Ex. G, Art. I, § 4. The Amended and Restated Agreement and Declaration of Trust of the International Training Institute similarly defines "Contributions" as "money paid or payable into the Trust Fund by an Employer pursuant to ta Collective Bargaining Agreement." *See* Shaw Decl., Ex. H, Art. I, § 6. Morever, the CBA provides as follows:

> Employer contributions are considered assets of the respective
> Funds and title to all monies paid into and/or due and owing
> said Funds shall be vested in and remain exclusively in the Trustees
> of the respective funds. The Employer shall have no legal or equitable
> right, title or interest in or to any sum paid by or due from the Employer.

6

*See* Shaw Decl., Ex. A, Art. XII(B), § 24(B).[2] In light of the clear contractual language and the applicable case law, the Court finds that Central Design's due but unpaid contributions to the plan do, in fact, constitute "plan assets." *See Philip Gen. Constr.*, 2007 WL 3124612, at *5 (finding unpaid contributions to be plan assets based upon similar contractual language); *see also Nettleton Mech. Contractors*, 478 F. Supp. 2d at 283 (citing *Trustees of the S. Cal. Pipe Trades Health & Welfare Trust Fund v. Temecula Mech., Inc.*, 438 F. Supp. 2d 1156, 1163 (C.D. Ca. 2006) (holding general rule that contributions do not become plan assets until paid to the plan "gives way in the face of language in the plan document identifying unpaid employer contributions as plan assets")).

Having found that the unpaid contributions constitute plan assets, the Court now turns to whether Nofer exercised the requisite level of control over such assets to be deemed a fiduciary. To make this determination, courts within the Second Circuit look to several factors, "[m]ost significantly, [whether] defendant was responsible for authorizing and making payments to an employee benefit plan." *Philip Gen. Constr.*, 2007 WL 3124612, at *5 (quoting *Pension Benefit Guar. Corp. v. Solmsen*, 671 F.Supp. 938, 944 (E.D.N.Y. 1987) (internal quotations omitted)); *accord LoPresti*, 126 F.3d at 40-41 (that company shareholder exercised primary authority over payments from company's general account supported holding him personally liable for failing to make required payments to ERISA trust funds); *Catucci*, 60 F. Supp. 2d at 202 (that company president "ran the corporation and ma[d]e all decisions on payments by" the company supported holding him personally liable as a fiduciary for failing to make required contributions to ERISA

---

[2] Pursuant to the terms of the CBA, the Employer is bound by the provisions of that agreement and the respective Agreements and Declarations of Trust governing the various Benefit Funds. Shaw Decl., Ex. A, Art. XII(B), § 24(A).

plans). In the instant case, the Court accepts as true Plaintiffs' allegation that Nofer was the sole owner of Central Design (*see* Pls.' Mem. at 2, 4; Compl., ¶¶ 17-18), and that he "exercise[d] control over the activities and operations of [Central Design] and determine[d] whether or not [Central Design] ma[d]e[] contributions to the Benefit Funds." Compl., ¶ 17; Pls.' Mem. at 2. The Court further accepts Plaintiffs' undisputed allegations that during the relevant period Nofer signed all checks on Central Design's accounts, including the checks payable to the Funds, and that Nofer, by himself, decided if and when the entity's bills, including contributions to the Funds, were to be paid (including deciding to use plan assets to pay creditors rather than forwarding the assets to the Funds). Pls.' Mem. at 4. Based upon these allegations, the Court finds that Plaintiffs have stated sufficient facts to support an inference that Nofer was a plan fiduciary as to the Benefit Funds. *See Philip Gen. Constr.*, 2007 WL 3124612, at *5; *see also Solmsen*, 671 F.Supp. at 946 (concluding that individual had fiduciary duty where defendant had power to authorize and make payments to the plan). For these reasons, I respectfully recommend to Judge Spatt that Nofer be held personally liable for damages to the Benefit Funds.

**B.    Damages**

Having recommended that Defendant Nofer should be held personally liable for the unpaid contributions, the Court now turns to ascertaining the amount of damages owed to Plaintiffs. Although "a defendant's default is deemed to constitute his admission of all well-pleaded allegations of liability," *Philip Gen. Constr.*, 2007 WL 3124612, at *9 (citations omitted), the court must still "conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) (citations omitted). "The Second Circuit has approved the holding of an inquest

8

by affidavit, without a hearing, 'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'" *Id*. (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 1009 F.3d 105, 1111 (2d Cir. 1997)).

Plaintiffs submitted the following documents in support of their request for an award of damages: Memorandum of Law in Support of Plaintiffs' Damages [DE 12]; the Declaration of Jeffrey S. Dubin, outside counsel for Plaintiffs, which includes a Statement of Attorneys' Fees [DE 11]; and the Declaration of Walter Shaw, Billing and Eligibility Manager for the Funds, in Support of Plaintiffs' Damages [DE 10], to which several exhibits are annexed, including (1) a complete copy of the CBA [DE 10, Ex. A], and (2) the Agreements and Declarations of Trust of the Funds which were adopted by Defendants and which set forth the applicable liquidated damages rate [DE 10, Exs. F-I, K].[3] The Court finds Plaintiffs' submissions to be sufficient evidence to form the basis for an award of damages. The following discussion assesses the amount of damages to which Plaintiffs are entitled based upon the information set forth in Plaintiffs' submissions.

Plaintiffs seek to recover damages of $77,100.22 for unpaid fringe benefits, $15,745.35 in interest on the unpaid fringe benefits, $15,419.76 in liquidated damages, $3,350.00 in attorneys' fees, and $450.00 in costs, for a total sum of $111,065.33.

### 1. *Principal*

Plaintiffs seek to recover unpaid fringe benefits earned by the Union members covered under the CBA between November 1, 2006 through June 30, 2007. Plaintiffs allege that Defendants entered into the CBA, were required to make certain contributions in accordance

---

[3] The Shaw Declaration does not contain an Exhibit J.

9

with the terms of that agreement, and failed to do so. In light of Defendants' default, these allegations are accepted as true and Defendants are liable for the unpaid fringe benefits. Plaintiffs request unpaid fringe benefits in the amount of $77,100.22. In support of this request, Plaintiffs submitted the Funds' Rate Sheets [DE 10, Ex. B] showing the contract contribution rates (as set forth in the CBA) for Union employees who worked for Defendants during the relevant time period, and the Schedules of Past Contributions [DE 10, Ex. C], which list the monies owed to the Funds by Defendants on a monthly basis from December 2006 through January 2007.[4] Shaw Decl., ¶¶ 12-24. In support of their damages request, Plaintiffs also submitted a Summary of Past Contributions [DE 10, Ex. D] for the period November 2006 through June 2007, which reflects the amounts due from Defendants, the amounts previously contributed, and the balance owed to the Funds. *Id.*, ¶¶ 26-27. The Summary of Past Contributions is based upon the data contained in the monthly remittance reports submitted by Defendants and the Schedules of Past Contributions and is, in effect, a summary of the Schedules. *Id.*, ¶ 25. Plaintiffs also submitted a Final Summary [DE 10, Ex. E] which lists the total amount owed by Defendants to the Funds for the relevant period and the amounts owed to each Fund. Shaw Decl., ¶ 31. The Schedules of Past Contributions, the Summary of Past Contributions, and the Final Summary were all prepared and maintained by the staff of the Funds' Billing and Eligibility Department, under Shaw's supervision, in the regular course of the Funds' business. *Id.*, ¶¶ 22, 25, 28, 34-36. Furthermore, these records "were made at or near the time of the occurrence set forth therein, as the computer data entry was made within hours or a

---

[4] Under the CBA and the relevant Trust Agreements, Employers are required to submit all contributions to the Funds Administrator on a monthly basis. *See, e.g.* Shaw Decl., Ex. A, Art. XII(B), § 26; Ex. H, Art. V, § 4(a).

few days of the time that the Funds received the monthly remittance reports" the Defendants. *Id.*, ¶ 33.

The Court's review of the records submitted by Plaintiffs reveals that the amount of delinquent fringe benefit contributions is $77,100.22, which Defendants have not paid despite their contractual obligation to do so. Accordingly, I respectfully recommend to Judge Spatt that damages be awarded in favor of Plaintiffs in the amount of $77,100.22 for the unpaid fringe benefit contributions.

### 2. *Interest On Unpaid Contributions*

Under ERISA, the Funds are entitled to recover interest on the unpaid fringe benefits at "the rate provided under the plan, or if none, 'the rate prescribed under section 6621 of Title 26.'" *Cement & Concrete Workers Dist. Council Welfare Fund,* 2007 WL 2712314, at *3, n.4 (quoting 29 U.S.C. § 1132(g)(2)).

Plaintiffs contend that they are entitled to interest at a rate of eight and one-half percent (8.5%) per month for unpaid contributions from November 1, 2006 through February 28, 2009, for a total amount of $14,745.35. *See* Dubin Decl., ¶ 7 (citing to 29 U.S.C. § 1132(g) in support of Plaintiffs' damages request). Following a careful review of the applicable law and the documents submitted by Plaintiffs, however, the Court is unable to find within the documents submitted any mention of interest at a rate of 8.5%. ERISA provides that where a judgment in favor of a Benefits Fund is awarded "the court shall award the plan . . . interest on the unpaid contributions. . . ." 29 U.S.C. § 1132(g)(2)(B). The statute further provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986." 29 U.S.C.

11

§ 1132(g). Consequently, Plaintiffs are clearly entitled to interest on the delinquent contributions. The Court looks first to the CBA, pursuant to which a delinquent "Employer agrees to pay the interest, liquidated damages, attorney's fees and costs as provided in the respective Trust Agreements." Shaw Decl., Ex. A, Art. XII(B), § 26. The Court next looks to the Trust Agreements, and particularly to Article 5, Section 4 of the Trust Agreement for the Sheet Metal Workers' National Pension Fund, to which Shaw refers in his Declaration in support of Plaintiffs' request for prejudgment interest. *See* Shaw Decl., ¶ 32. That provision states, in pertinent part, that "Delinquent Contributions shall bear interest from the original due date until they are paid at the rate of 1% per month, compounded monthly." Shaw Decl., Ex. F, Art. 5, § 4(c). However, the Trust Agreements for the four other Funds contain varying provisions regarding interest rates on delinquent contributions. For example, the Trust Agreement for the National Stabilization Agreement provides that "[i]nterest on unpaid contributions shall be determined using the rate prescribed under Section 6621 of the Internal Revenue Code of 1954." Shaw Decl., Ex. G, Art. V, § 4(c). However, the Trust Agreement for the International Training Institute states that delinquent Employers shall pay "interest on the unpaid Contributions at such rate as the Trustees may fix from time to time or in particular cases[.]" Shaw Decl., Ex. H, Art. VII, § 8(b). The Trust Agreement for the Sheet Metal Occupational Health Institute Trust provides that "the Trustees may require a delinquent Employer to pay[, *inter alia*]: (a) interest on the delinquent contributions. . . ." Shaw Decl. Ex. I, Art. V, § 5.5(b). Finally, the Trust Agreement for the National Energy Management Institute Committee provides that the "Trustees may take any action necessary or appropriate to enforce payment of the contributions, expenses and liquidated damages due from an employer, including, but not limited to proceedings at law

12

and in equity. The Trustees shall adopt such rules and regulations as may be necessary to ensure that employers are making the proper contributions to the Fund on a timely basis." Shaw Decl., Ex. K, Art. V, § 5.5(b).

Based upon ERISA, the CBA and the Trust Agreements, the Court finds that Plaintiffs are entitled to prejudgment interest on the unpaid contributions for the period beginning on the date the contributions became delinquent and running through the date that judgment is entered here. Notwithstanding the careful review of the relevant agreements, however, the Court is unable to find any mention of an 8.5% interest rate. Based on the documents provided, it appears that the interest rate is either (1) 1% per month, compounded monthly *or* (2) the interest rate prescribed under Section 6621 of the Internal Revenue Code *or* (3) the rate "fixed by the trustee from time to time," which rate has not been identified.[5] Accordingly, based upon the current record, I respectfully recommend to Judge Spatt that interest be awarded to Plaintiffs, but that the amount be deferred pending Plaintiffs' submission of additional information. Plaintiffs shall have two (2) weeks to submit additional documentation in support of their request for interest at the rate of 8.5%.

---

[5] Mr. Shaw is not a Trustee of the Funds and no statement or documentary support from the Trustee has been provided setting forth an 8.5% rate of interest. If 8.5% is the "rate fixed by the trustee from time to time," then Plaintiffs need to submit some supporting documentation.

### C. Liquidated Damages

Plaintiffs also seek an award of liquidated damages as contemplated by the CBA and ERISA. Plaintiffs are entitled to liquidated damages "in an amount not in excess of 20 percent of the principal amount due," pursuant to 29 U.S.C. § 1132(g)(2)(C). *See Cement and Concrete Workers District Council Welfare Fund*, 2007 WL 2712314, at *3.[6] The applicable trust agreements likewise require liquidated damages of 20% under the circumstances present here, and provide that such "liquidated damages are estimated, to the best of the Trustees' ability, to approximate the cost to the Fund of the additional administrative expenses and losses incurred when the Fund takes legal action to collect delinquent Contribution." *See* Shaw Decl., Ex. F, Art. V, § 4(c).

As discussed above, I recommend that Plaintiffs' damages award include a principal amount of $77,100.22. Twenty percent of $77,100.22 is $15,420.04.[7] Accordingly, I respectfully recommend to Judge Spatt that Plaintiffs be awarded liquidated damages in the sum $15,420.04.

### D. Attorneys' Fees and Costs

Finally, Plaintiffs seek reimbursement for attorney's fees and costs. "An award of costs and reasonable attorneys' fees, in an action such as this, to recover unpaid union fringe benefit

---

[6] Specifically, the statute provides that Plaintiffs are entitled to liquidated damages in "an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C).

[7] Plaintiffs request an award of $15,419.76 in liquidated damage. However, in performing its own calculations, the Court determined that the appropriate amount of liquidated damages, which is 20% of the principal amount ($77,100.22 x .20), is $15,420.04 (a difference of 28 cents).

contributions, is mandatory." *Mason Tenders Dist. Council Welfare Fund. v. A.G.I., Inc.,* No. 03 Civ. 1238, 2005 WL 1565831, at *6 (S.D.N.Y. June 8, 2005) (citing, *inter alia* 29 U.S.C. § 1132(g)(2)). First, Plaintiffs seek costs and disbursements in the amount of $450.00. Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reidman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 (2d Cir. 1987). Here, Plaintiffs' request for costs and disbursements consists of $350.00 paid to the Clerk of this Court for the filing fee in this action, and $100.00 paid to a process server for service of the Summons and Complaint on the corporate and individual Defendants. *See* Dubin Decl., ¶¶ 10, 13. The Court finds that these costs were incurred by Plaintiffs in connection with the filing and service of the Complaint in this action and the appropriate supporting documentation has been provided. Accordingly, I respectfully recommend to Judge Spatt that Plaintiffs be awarded costs in the amount of $450.00.

Secondly, Plaintiffs request attorney's fees in the amount of $3,350.00. Courts within the Second Circuit determine appropriate attorneys' fees in federal litigation according to a standard of a "presumptively reasonable fee."[8] *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183, 189 (2d Cir. 2007), *amending* 493 F. 3d 110 (2d Cir. 2007). This number should represent "what a reasonable, paying client would be willing to pay" for legal services rendered, and a court should consider the following factors in its calculation:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the

---

[8] The Second Circuit has recommended abandoning the term "lodestar" as its meaning "has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness." *Arbor Hill*, 522 F.3d at 190 & n.4.

> resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Id.* at 184, 190.

The "presumptively reasonable fee" is comprised of a "reasonable hourly rate multiplied by a reasonable number of expended hours." *Omega Comm'n Services, Inc.*, 543 F. Supp. 2d at 164 (citations omitted). "The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged." *Id.* (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983)).

To determine reasonable hourly rates, the Court must refer to "the prevailing [market rates] in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). The Court must also, "in exercising its considerable discretion," consider the factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)[9] and remain mindful that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.

---

[9] The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitation imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Johnson*, 488 F.2d at 717-19.

Generally, "hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners. . . . ." *Said v. SBS Elecs, Inc.*, No. CV 08-3067, 2010 WL 1265186, at *10 (E.D.N.Y. Feb. 24, 2010) (quoting *Fuchs v. Tara Gen. Contracting, Inc.*, No. CV 06-1282, 2009 WL 3756655, at *2 (E.D.N.Y. Nov. 3, 2009); *see also Finkel v. Triple A Group, Inc.,* No. 07-CV-2653, 2010 WL 1688359, at *3 (E.D.N.Y. Apr. 27, 2010) (in delinquent contributions case under ERISA, hourly rates ranging from $200 to $225 per hour for attorneys found reasonable); *Gesualdi v. Mack Excavation & Trailer Serv., Inc.,* No. 09-CV-2502, 2010 WL 985294, at *3 (E.D.N.Y. Mar. 15, 2010) (awarding $275 hourly rate in ERISA default judgment action based upon counsel's 40 years of legal experience and ERISA expertise); *Cho v. Koam Med. Servs. PC*, 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) (awarding fees in FLSA and New York Labor Law case based on $250 hourly rate for partner); *Corbett v. Reliance Moving & Storage, Inc.*, No. 1:00-cv-07656, 2007 U.S. Dist. LEXIS 96747, at *13-*15 (E.D.N.Y. May 30, 2007) (awarding an hourly rate of $250 per partner).

To determine whether the number of hours spent by Plaintiffs' counsel was reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Fox Indus., Inc. v. Gurovich*, No. CV 03-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). A court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the litigation. . . ." *Cho*, 524 F. Supp. 2d at 209 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "In lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-board percentage cuts in the number of hours claimed, 'as a practical means of trimming fat from a fee

application.'" *Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 WL 1373118, at *5 (S.D.N.Y. May 8, 2007) (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987)).

A party seeking an award of attorney's fees bears the burden to document "the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflecting, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done." *Cho*, 524 F. Supp. 2d at 209 (internal citations, quotation marks, and alteration omitted). In the instant case, in support of the request for attorney's fees, Plaintiffs' counsel, Jeffrey Dubin, submitted a Declaration in which he sets forth his professional background and hourly rate. The Declaration also contains a Statement of Attorneys' Fees, in which counsel provides descriptions of the tasks performed on behalf of Plaintiffs in connection with this case, the dates on which such tasks were performed, and the amount of time spent on such individual tasks. *See* Dubin Decl., ¶ 13. Counsel's hourly rate for this work is $250.00 and he spent of total of 13.4 hours on tasks related to prosecution of this action on Plaintiffs' behalf, for a total of $3,350.00. *Id.*, ¶¶ 11, 13. Based upon the information provided to the Court, I find counsel's hourly rate to be reasonable, and such rate is well within the parameters found reasonable by other courts in this District, as discussed above. The number of hours expended in bringing this case to resolution, as set forth in the Statement of Attorneys' Fees, is likewise reasonable.

Accordingly, I respectfully recommend to Judge Spatt that Plaintiffs be awarded the requested attorneys' fees in the amount of $3,350.00, bringing the total award for attorneys' fees and costs ($450.00) to $3,800.00.

## IV. CONCLUSION

Based upon the foregoing information, I respectfully recommend to Judge Spatt that Plaintiffs be awarded damages in the following amounts:

- $77,100.22 for unpaid fringe benefits;
- interest in amount to be determined;
- $15,420.04 in liquidated damages;
- $450.00 in court costs and disbursements; and
- $3,350.00 in attorneys' fees.

I further recommend that Plaintiffs be allowed two (2) weeks to submit additional support for their interest calculations and an explanation of the relevant period. Once that information is received and reviewed, the total recommended damages can be calculated and a final judgment can thereafter be entered.

****

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, any objections to this Report and Recommendation must be filed within fourteen (14) days of service. Each party has the right to respond to the other's objections within fourteen (14) days after being served with a copy. *See* Fed. R. Civ. P. 6(a),(e), 72. All objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Arthur D. Spatt. Any request for an extension of time for filing objections must be directed to Judge Spatt prior to the expiration of the period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d

Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
May 25, 2010

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge